STEPHEN G. LARSON (SBN 145225)
MICHAEL S. CRYAN (SBN 249507)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
Email: Stephen.Larson@arentfox.com
Email: Michael.Cryan@arentfox.com

Attorneys for Plaintiff
RAF Insurance Services, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAF Insurance Services, Inc., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>PHL Variable Insurance Company, a Connecticut corporation,<br><br>Defendant. | Case No. **'13CV1994 JAH DHB**<br><br>COMPLAINT |

Plaintiff RAF Insurance Services, Inc. ("RAF" or "Plaintiff") alleges as follows:

**INTRODUCTION**

1.  Plaintiff is an insurance agent and broker. Pursuant to a contract (the "Broker Agreement") between RAF and Defendant PHL Variable Insurance Services ("PHL" or "Defendant") executed on or about September 7, 2005, Plaintiff marketed life insurance policies to its clients that were ultimately underwritten and issued by PHL. For these services, Plaintiff received a commission and expense allowance as specified in the Broker Agreement. This dispute arises under the Broker Agreement, which is governed by Connecticut law.

2.  PHL is a national life insurance company that has issued billions of dollars of life insurance on senior citizens, most of which it issued during the time period 2006-2009. The

CASE NO.
NYC/757483.5

COMPLAINT

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

majority of these policies were issued to owners that ultimately transferred their ownership rights to third-parties, through various types of arrangements.

3. PHL included a unique provision in each of its policies that allowed it the right of first refusal in the event any policy owner decided to sell its interest a life insurance policy. Upon information and belief after PHL learned that the vast majority of policies it had issued on seniors during the relevant time period had been transferred to third parties, PHL decided to take a series of actions to attempt to obtain ownership of the policies in order to cancel those policies and reduce its underwriting risk by hundreds of millions of dollars.

4. Upon information and belief, actions taken by PHL have been outlined in other litigations, most particularly in the cases described further below. As these allegations outline, PHL and its related companies ceased issuing new policies in 2009 and to initiated a scheme to destroy the value of their existing policies in the hands of third parties by: (i) reacquiring a portion of those policies; (ii) creating litigation risks for the third-party owners; and (iii) taking actions designed to make it very difficult for third-party owners to manage and control the policies.

5. As a result of these various actions, the trustee of almost 30 policies filed two separate lawsuits against PHL in California, which became consolidated for discovery. Those actions are referred to as the "Fenton Actions."

6. The plaintiffs in the Fenton Actions made a number of claims against PHL, including claims for fraud and breach of the duty of implied good faith and fair dealing and sought, among other things punitive damages. At some point in 2012, and according to terms that have been kept confidential from RAF, the plaintiffs and PHL settled the Fenton Actions for the payment of a substantial amount of cash.

7. Subsequently PHL has, by twisting the words and intent of the Broker Agreement, claimed that the terms of the Broker Agreement entitle it to recover the amounts it paid in settling the Fenton Actions by characterizing the entirety of this settlement as a "refund" of premiums. In doing so, PHL has demanded that Plaintiff accept PHL's characterization of the settlement of the Fenton Actions by refusing to provide Plaintiff with a copy of the settlement agreement unless

CASE NO.                                                                                              COMPLAINT
- 2 -

NYC/757483.5

Plaintiff agrees to onerous confidentiality requirements.

8. Although Plaintiff has no knowledge of the basis for payments made by PHL in the Fenton Actions, on information and belief, PHL has no good faith basis to assert that such payments trigger the chargeback provisions in the Broker Agreement since, as with most settlements against large corporations in cases involving bad faith and potential punitive damage exposure, settlements are business decisions based on many factors, including litigation costs, litigation risks, and many assessments that will be protected as attorney-client communications. PHL may not fairly claim that the amounts that were paid to settle the Fenton Actions were refunds of premium that would fall under the Broker Agreement.

9. Furthermore, to enforce its erroneous interpretation of the Broker Agreement, PHL has withheld commissions and expense allowance due to Plaintiff and to Plaintiff's employee, who is not a party to the Broker Agreement. In addition, by letter dated July 12, 2013, PHL threatened RAF with litigation if RAF did not make payment arrangements by August 2, 2013.

10. Plaintiff brings this action to recover commissions and expense allowances it and its employee are due under the Broker Agreement and for a declaration that PHL is not entitled to recover commissions paid on premiums.

## PARTIES

11. Plaintiff RAF Insurance Services Inc. is a corporation organized under the laws of, and does business in, the State of California and is a citizen of the State of California.

12. Upon information and belief, Defendant PHL Variable Insurance Company is a corporation organized under the laws of, and maintains its principal place of business in, the State of Connecticut and is a citizen of the State of Connecticut. At all relevant times, PHL has done and continues to do business in the state of California, including its relation with Plaintiff.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy is over $75,000.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO.

NYC/757483.5

- 3 -

COMPLAINT

## STATEMENT OF THE CASE

### PHL's Efforts to Reacquire Policies it has Issued

15. According to widely disbursed reports and allegations of large policy owners, PHL has orchestrated a scheme to divest itself of its insurance liabilities by forcing policy owners to surrender or sell their policies. Upon information and belief, PHL has done so by, among other things, initiating baseless litigation against its policy owners, refusing to allow rightful transfers of policies, raising fees and costs on policy owners, and refusing to pay death benefit claims. These activities have decreased the value of the policies and increased the cost of maintaining those policies, resulting in a desire by some owners to sell the policies back to PHL.

16. The conduct of PHL in this regard is the subject of numerous litigation matters, including an anti-trust proceeding against PHL and other related entities in Federal District Court in Connecticut styled *Lima LS PLC v. PHL Variable Insurance Company, et al.* No. 12-CV-01122 (WWE) (the "Lima Action").

17. In the Lima Action, Plaintiff Lima LS plc ("Lima"), asserts that PHL concocted a scheme to eliminate its liabilities by: (i) refusing or delaying lawful policy transfers; (ii) unlawfully raising the cost of insurance; (iii) issuing false and misleading policy illustrations; (iv) resisting death benefit claims on baseless and pretextual grounds; (v) unlawfully retaining premiums on policies it sought to rescind; and (vi) instituting objectively baseless litigation to drive up the cost of owning a policy issued by PHL. The anti-trust claim asserted in the Lima Action survived a Rule 12(b)(6) motion and the case is pending.

18. As the next logical step of the strategy developed by PHL and exposed in the Lima Action, PHL attempts to pass on the costs of eliminating its exposures under its policies to its brokers and agents, including Plaintiff.

### The Broker Agreement

19. Section 3.5 of the Broker Agreement provides for a repayment of "commissions" paid to Plaintiff, referred to as a "chargeback," if PHL is required to "for any reason refund or return any amount of any premium payment made on a policy off contract."

20. Chargeback provisions are common in broker and agent agreements in the life insurance industry. Brokers and agents, like Plaintiff, have long been aware of the fact that, under certain circumstances, a commission – but not an expense allowance -- that is earned when premium is paid may be subject to a chargeback during the policy's two-year contestability period if, for some valid reason, a policy is cancelled and any portion of the premium is refunded by the insurance company.

21. In entering into the contracts with PHL, Plaintiff knew and understood that the terms of the chargeback provision would be enforceable in accordance with industry custom and practice but did not know, and had no reason to know, of the method by which PHL now seeks to use that provision. PHL's use of the chargeback provision violates the terms of the Broker Agreement, industry custom and practice, the implied duty of good faith and fair dealing inherent in the Broker Agreement, the Connecticut Unfair Trade Practices Act and the California Unfair Business Practices Act.

22. In fact, no other life insurance company other than PHL and its related companies has taken such action to reacquire its policies by surrender and to impose the costs of reacquiring its policies on its brokers and agents.

**PHL Seeks to Recover from Plaintiff its Settlement Payment in the Fenton Actions**

23. On or about August 16, 2010, Alan H. Fenton as trustee for multiple life insurance trusts filed a third amended complaint in his action against PHL in the Superior Court for the State of California, County of Santa Barbara. As in the Lima Action, Fenton asserted that PHL engaged in tactics designed to defraud its policy owners by representing that the policies were freely transferrable despite PHL's intention to rescind the policies and retain all premiums paid if the policy owner attempted to transfer or assign the policy.

24. Fenton raised seven causes of action against PHL in the Fenton Actions: (i) conversion; (ii) interference with contract; (iii) interference with prospective economic advantage; (iv) negligent interference with business relationships; (v) breach of contract; (vi) breach of the covenant of good faith and fair dealing: and (vii) fraud.

CASE NO.

NYC/757483.5

- 5 -

COMPLAINT

25. PHL ultimately settled the Fenton Actions pursuant to a settlement agreement, the terms of which PHL has not provided to Plaintiff. PHL has advised Plaintiff that all amounts paid were refunds of premium and has claimed that chargeback provision of the Broker Agreement compels Plaintiff to return a substantial portion of both commissions and expense allowances that PHL had paid on certain policies at issue in the Fenton Actions (the "Fenton Policies"). Central to PHL's demand is the unwarranted assertion that the entire amount of the settlement in the Fenton Actions constitutes refund of premiums on the policies involved in the cases.

26. By letter dated November 1, 2012, PHL demanded the return of $1,248,226.71 in commissions it paid to Plaintiff in respect of the Fenton Policies.

27. By email dated November 6, 2012, Plaintiff requested clarification of the terms of the settlement of the Fenton Actions. Plaintiff further requested that PHL refrain from withholding commissions due to Plaintiff under the Broker Agreement until PHL could prove that a chargeback was due.

28. By letter dated November 7, 2012, PHL refused each of Plaintiff's requests. PHL, seeking to intimidate Plaintiff into paying the amount requested without further inquiry, refused to provide the terms of the settlement agreement in the Fenton Actions unless a confidentiality agreement exposing Plaintiff to damages and injunctive relief was signed by each and every party to review the settlement agreement. Moreover, PHL confirmed that it intended to hold hostage all commissions and expense allowances due to Plaintiff under the Broker Agreement by refusing to refrain from withholding such funds until it could establish that it was entitled to a chargeback because, in its view, the Broker Agreement "does not impose upon [PHL] any evidentiary obligation prior to the exercise" of the chargeback.

29. Plaintiff challenged PHL's attempt to strong arm Plaintiff by letter dated December 12, 2012, wherein Plaintiff again demanded that if PHL sought to establish that it was entitled to have certain commissions paid to Plaintiff returned to it pursuant to the settlement of the Fenton Actions, PHL must provide the settlement agreement to Plaintiff without imposing any burden on Plaintiff. Further, Plaintiff demanded the release of funds improperly withheld by PHL, pointing out that PHL had failed to provide any documentary evidence that it had a valid

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO.

NYC/757483.5

- 6 -

COMPLAINT

1  contractual basis to seek a return of commissions in the first place.

2  30.  PHL responded by letter dated December 14, 2012, asserting that it is entitled to enforce the chargeback clause of the Broker Agreement. Accordingly, PHL affirmed that it would continue to withhold commissions due to Plaintiff "while [it] assess[ed] appropriate next steps."

31.  PHL followed up by letter dated July 12, 2013. In this letter, PHL threatened that "[i]f you [counsel for Plaintiff] or a representative of RAF do not contact me to make payment arrangements by August 2nd, [PHL] will file a breach of contract lawsuit against RAF in the United States District Court for the District of Connecticut seeking a return of the compensation paid to RAF on the above mentioned policies. A copy of the lawsuit we intend to file is attached for your review."

32.  In response to this intimidation tactic, Plaintiff seeks a declaration that PHL may not recover any of the costs of settlement of the Fenton Actions or any other cases in which, as a result of on-going litigation, PHL made a decision to pay money to reacquire its policies from owners.

**PHL's Conduct is Contumacious and Violates Law and Industry Practice**

33.  The acts of PHL violate industry custom and practice, the implied duty of good faith and fair dealing, the Connecticut Unfair Trade Practices Act and the California Unfair Business Practices Act, in the following ways:

  a. Upon information and belief, PHL's settlement of the Fenton Actions is a part of its strategy to eliminate insurance liabilities by reacquiring its own policies. The settlement of the Fenton Actions that PHL seeks to impose on Plaintiff by way of "repayment of commissions" are, upon information and belief, not refunds of premium, but are actually payments to settle disputed matters, including a wide variety of claims of bad faith by the policy owners against PHL, avoiding costs of defense and litigation risk and allowing PHL to reduce its liabilities by over $200,000,000. To claim that this multi-million dollar settlement is wholly and exclusively a refund of premium is disingenuous;

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO.
NYC/757483.5

- 7 -

COMPLAINT

b. A refund of premium leading to an appropriate chargeback is a limited concept in the industry and has seldom been challenged by any brokers or agents. Such chargebacks happen as a matter of course after an insurance company has refunded money directly to a policy owner and provides proof of the refund to the broker or agent. Here, PHL did not refund money to owners but instead settled the Fenton Actions under a cloak of confidentiality and has provided absolutely no proof to Plaintiff of the settlement. In fact, as noted above, when Plaintiff requested a copy of the settlement of the Fenton Actions, Plaintiff was told that only if Plaintiff committed to maintain confidentiality, and therefore to be liable for injunctive and monetary damages, would PHL share the settlement agreement with Plaintiff. To date, despite PHL's demand and threatened litigation, Plaintiff have not seen the settlement agreement in the Fenton Actions;

c. PHL's demands require that Plaintiff return all compensations paid on all amounts that were allegedly allocated as premium in settlement of the Fenton Actions. Even with respect to any payment amount that might be properly deemed a premium refund, only the commission paid on that premium, not the expense allowance, may be charged back. Thus, when PHL demands that Plaintiff return 100% of its commissions with respect to the settlement of the Fenton Actions, PHL is willfully misconstruing the language of the Broker Agreement, since the Broker Agreement only requires the repayment of commissions, which is 50% of any premium amount, and does not affect amounts paid to Plaintiff for expense allowance; and

d. PHL has unilaterally withheld commissions and expense allowances due to Plaintiff and the Plaintiff's employee in relation to other, unrelated, polices placed by Plaintiff and the Plaintiff's employee pursuant to the Broker Agreement in an effort to force Plaintiff to repay the commissions.

CASE NO.  
NYC/757483.5

- 8 -

COMPLAINT

ARENT FOX LLP  
ATTORNEYS AT LAW  
LOS ANGELES

# FIRST CAUSE OF ACTION

## Breach of the Implied Covenant of Good faith and Fair Dealing

34. Plaintiff hereby incorporate paragraphs 1-33 above as though fully set forth herein.

35. Plaintiff entered into the Broker Agreement with PHL with the understanding and expectation, which was clearly understood by PHL, that PHL would act in good faith and deal fairly with Plaintiff and would follow industry custom and practice. Accordingly, defendant PHL owes a duty of good faith and fair dealing to Plaintiff.

36. Upon information and belief, PHL initiated a scheme whereby it intended to, by sheer force and intimidation, compel Plaintiff to return commissions received related to Plaintiff's placement of the Fenton Policies.

37. As a proximate result of PHL's wrongful conduct, Plaintiff have suffered, and will continue to suffer in the future, damages, plus interest, in an amount to be shown at trial.

38. As a further direct and proximate result of PHL's wrongful conduct, Plaintiff have been obligated to expend and incur liability for costs of suit, attorneys' fees and related expenses not yet fully ascertained, but which will be submitted at trial.

# SECOND CAUSE OF ACTION

## For Violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. § 42-110b *et seq*)

39. Plaintiff hereby incorporate paragraphs 1-38 above as though fully set forth herein.

40. Upon information and belief, Plaintiff allege that PHL initiated a scheme whereby it intended to, by sheer force and intimidation, compel Plaintiff to return commissions received related to Plaintiff's placement of the Fenton Policies.

41. At all times relevant hereto, Defendant PHL was engaged in a trade or business within the meaning of Conn. Gen Stat. § 42-110b *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA").

42. By virtue of all of the foregoing, Defendant PHL violated CUTPA because its conduct was immoral, unfair, unscrupulous, oppressive and unethical.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO.
NYC/757483.5

- 9 -

COMPLAINT

43. As a direct and proximate result of Defendant PHL unfair trade practices, Plaintiff have sustained general, specific and consequential damages in an amount to be established at trial.

## THIRD CAUSE OF ACTION

**For Violation of the California Unfair Business Practices Act (California Business and Professions Code §§17200 *et seq.*)**

44. Plaintiff hereby incorporate paragraphs 1-43 above as though fully set forth herein.

45. Business and Professions Code §§ 17200 *et seq.* prohibits business practices which are "unlawful, unfair or fraudulent."

46. A business practice is "unlawful" under Business and Professions Code §§17200 *et seq.* if it violates any federal or state statutory or common law. A business practice is "unfair" under Business and Professions Code §§17200 *et seq.* if it is "deceptive" even if "lawful." A business practice is "fraudulent" under Business and Professions Code §§17200 *et seq.* if members of the public would likely be deceived, even if they are not actually deceived.

47. Plaintiff is informed and believes, and thereon alleges, that PHL's acts, as alleged herein, including PHL's refusal to provide Plaintiff with the terms of the settlement of the Fenton Actions and its subsequent withholding of commissions and expense allowances owed to Plaintiff are unlawful, unfair and/or fraudulent.

48. As a proximate result of the unlawful, unfair and/or fraudulent conduct of PHL, PHL is entitled to recover commissions and expense allowances owed to Plaintiff that have been withheld by PHL.

49. The rights of Plaintiff have been violated by PHL's unlawful, unfair and/or fraudulent acts and practices, and PHL has been and will continue to be unjustly enriched by the unlawful, unfair and/or fraudulent conduct as alleged herein unless and until the Court provides the relief prayed for below.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO.

NYC/757483.5

- 10 -

COMPLAINT

## FOURTH CAUSE OF ACTION

### For Breach of Contract

50. Plaintiff hereby incorporate paragraphs 1-49 above as though fully set forth herein.

51. Plaintiff have performed all conditions, covenants, and promises required to be performed on Plaintiff's part in accordance with the terms and conditions of the Broker Agreement, except those waived, excused and/or prevented by Defendant PHL and/or its agents.

52. Plaintiff have demanded and continue to demand that Defendant PHL release commissions due to Plaintiff that have been unjustifiably withheld, but, Defendant PHL has failed and refused, and continues to fail and refuse, to do so. This failure and refusal is wrongful and in breach of the terms of the Broker Agreement.

53. As a direct and proximate result of Defendant PHL's improper and wrongful refusal to release commissions owed to Plaintiff under the terms of the Broker Agreement, Plaintiff have sustained general, specific and consequential damages in an amount to be established at trial.

## FIFTH CAUSE OF ACTION

### For Declaratory Relief

54. Plaintiff hereby incorporate paragraphs 1-53 above as though fully set forth herein.

55. Pursuant to 28 U.S.C. § 2201(a), and as evidenced by Defendant PHL's threats to file a lawsuit against Plaintiff, an actual controversy exists between Plaintiff and Defendant PHL regarding their respective rights and obligations under the Broker Agreement.

56. Defendant PHL contends that, under the Broker Agreements that all amounts paid to its policy owners in settlements of litigation constitute repayment of premium for which it is entitled to a chargeback of commissions paid to Plaintiff without any evidentiary obligation on PHL's part to establish its right to such payment.

57. Plaintiff contend the Broker Agreement does not allow for the chargeback of commissions in the manner sought by Defendant PHL, and that the chargeback provision of the Broker Agreement requires Defendant PHL to establish, by documentary evidence disclosed without imposing any obligation on Plaintiff, that the amounts for which Defendant PHL seeks a

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO.

NYC/757483.5

- 11 -

COMPLAINT

chargeback solely constitute refunded premiums.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

1. For a declaration adjudicating the Parties' respective rights and duties under the Broker Agreement, including a declaration that the chargeback provision of the Broker Agreement requires Defendant PHL to establish, by documentary evidence disclosed without imposing any obligation on Plaintiff, that the amounts for which Defendant PHL seeks a chargeback solely constitute refunded premiums;

2. For the immediate release of all withheld commissions and expense allowances due to Plaintiff and its employee under the Broker Agreement;

3. For compensatory damages according to proof;

4. For punitive damages, including punitive damages assessed pursuant to Conn. Gen. Stat. § 42-110g(a) for any damages caused by Defendant PHL's unfair trade practices;

5. Attorneys fees and costs, pursuant to Conn. Gen. Stat. § 42-110g(d)

6. For pre-judgment interest; and

7. Such other and further relief as the Court may deem just and equitable.

Dated: August 26, 2013

**ARENT FOX LLP**

By: _____
STEPHEN G. LARSON
MICHAEL S. CRYAN
Attorneys for Plaintiff
RAF INSURANCE SERVICES, INC.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO.

NYC/757483.5

- 12 -

COMPLAINT